UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CELESTE GAETA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 4:21-cv-00031 |
| v. | ) |
| | ) |
| CRACKER BARREL OLD COUNTRY STORE, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. Nature of the Case**

Plaintiff, Celeste Gaeta ("Gaeta"), brings this action against her former employer, Cracker Barrel Old Country Store, Inc. ("Defendant"), alleging violations of her rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), and Indiana state law.

**II. Parties**

1. Gaeta has resided within the Northern District of the State of Indiana at all relevant times.

2. Defendant operates its business within the Northern District of Indiana,

1

Lafayette Division.

### III.  Jurisdiction and Venue

3. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A), 29 U.S.C. § 2611(4) and 42 U.S.C. § 2000e(b).

4. Gaeta was an "employee" within the meaning of 42 U.S.C. § 12111(4), 29 U.S.C. § 2611(2), and 42 U.S.C. § 2000e(f).

5. At all relevant times, Gaeta was an eligible employee with a serious health condition, as defined by the FMLA.

6. At all relevant times, Gaeta has been a qualified individual with a disability, has had a record of disability, and/or has been regarded as disabled by Defendant, as defined by the ADA.

7. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 29 U.S.C. § 2617(a)(2), 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5(f)(3).

8. Gaeta satisfied her obligations to exhaust her administrative remedies and now timely files her lawsuit.

9. Venue is proper in this Court.

### IV.  Factual Allegations

10. Gaeta, a female, began working for Defendant on or about July 27, 2015 as a Restaurant Management Trainee.

11. Gaeta was promoted to Associate Manager on or about September 23, 2015 and began working at Defendant's restaurant located at 40 Frontage Road, Lafayette, Indiana.

12. Gaeta's performance as an Associate Manager met or exceeded Defendant's reasonable expectations at all relevant times.

13. In early 2016, Gaeta began reporting to General Manager Nathan Theodore.

14. At all relevant times, Gaeta is a single mother of two children.

15. During 2018 and 2019, Gaeta was typically scheduled to work the opening shift, which allowed her to care for her two children after school.

16. In or about April 2019, Gaeta began experiencing significant health issues. The symptoms associated with Gaeta's physical impairment included sharp menstrual pains and hemorrhaging, which continued to increase in severity over the following months.

17. At all relevant times, Gaeta's impairment substantially limited one or major life activities including, but not limited to, working; and/or substantially limited the operation of one or more major bodily functions including, but not limited to, reproductive functions.

18. At all relevant times, Defendant perceived Gaeta to suffer from a physical impairment that was neither transitory nor minor.

19. On or about August 16, 2019, Gaeta was suffering from acute symptoms related to her health issues while working, and she asked Theodore if she could leave work an hour early to see her doctor. Theodore was visibly frustrated by Gaeta's request.

20. On or about August 18, 2019, Gaeta began visibly hemorrhaging at work while talking with Theodore. Theodore walked her out the back door, gave her a cardboard box to sit on, and told her that she could go home to change clothes but that she needed to return to work immediately.

21. After she got home, Gaeta told Theodore that she was unable to return to work due to her condition. Theodore expressed irritation and frustration toward Gaeta.

22. Around this same time, District Manager Pat Armstrong spoke to Gaeta about her health issues. Armstrong suggested only that Gaeta request paid time off leave to cover absences.

23. Despite the fact that Gaeta's serious health condition, disability and need for accommodation were obvious, Respondent failed to engage her in the interactive process, provide her with an accommodation, or offer her FMLA leave.

24. Over the course of the following months, Gaeta continued to experience symptoms associated with her health issues and continued to seek medical treatment. During this same time, Theodore shamed Gaeta over her health issues and expressed frustration with the same, telling her that she needed to "figure out" her issues, and he applied constant pressure on her not to miss work, forcing Gaeta to bring extra clothes

4

to work to change into as needed. He discussed her private health information with other employees, told Gaeta that she needed to switch doctors because her doctor was incompetent, and suggested that she seek specific medical treatments so that "*we* do not have to deal" with the medical issues anymore. Theodore's actions caused Gaeta to suffer tremendous mental stress and anxiety.

25. On or about October 2, 2019, Gaeta discovered that she was pregnant. Shortly thereafter, Gaeta notified Theodore of her pregnancy and asked him to keep the information confidential. Theodore suggested that she get an abortion. Theodore later shared Gaeta's private health information with other employees.

26. From approximately October 17, 2019 through November 13, 2019, Gaeta's doctor attempted to schedule an office visit, but Gaeta was unable to do so out of fear of losing her job. On or about November 14, 2019, Gaeta was able to visit her doctor, who emphasized the serious nature of her health issues and stated that she could not continue to treat her if she was unable to prioritize her health over her job.

27. On or about November 15, 2019, Gaeta experienced acute symptoms associated with her medical issues while at work, including significant hemorrhaging. She contacted her medical provider, who advised her to immediately leave work and go to the hospital. Theodore had not yet reported to work, so Gaeta contacted Human Resources Representative Ruby Hicks and engaged in protected conduct when she expressed her desperation about trying to address her medical issues while avoiding termination and inquired about FMLA leave. Hicks discouraged Gaeta from requesting

FMLA leave, stating that she needed to work with Theodore regarding intermittent medical leave and that she should only file for FMLA leave if her paid time off and short term disability coverage had been depleted.

28. Theodore reported to work shortly before noon while Gaeta was on the phone with her medical provider, who reiterated that Gaeta needed to report to the hospital, and offered to speak to Theodore to explain the same. Gaeta put Theodore on the phone; he listened for a bit, handed the phone back to Gaeta, and then walked away. Theodore refused to excuse Gaeta from work until shortly before the end of her shift at 3:00 P.M.

29. Gaeta left work and went to the hospital, where she was diagnosed with an incomplete miscarriage. Afterwards, Gaeta returned to work with her discharge papers and a doctor's note requesting medical leave from November 15 – 17. Theodore reviewed the documents, said nothing, and handed them back to Gaeta.

30. That evening, Gaeta received a text message from another employee refusing to cover Gaeta's shift the following day, harassing her about missing work, and accusing her of being selfish.

31. Gaeta contacted Theodore and engaged in protected conduct when she complained that other employees were harassing her and subjecting her to a hostile environment. Theodore refused to offer any assistance, stating it was not his responsibility. Defendant failed to properly investigate Gaeta's complaints or remedy the same.

32. On or about November 22, 2019, Gaeta again engaged in protected conduct when she informed Theodore that she needed medical leave from December 23 – 27, 2019 for an upcoming surgery in relation to her health issues, and she also contacted Human Resources Representative Hicks to request FMLA leave. Hicks again discouraged Gaeta from filing for FMLA leave. Gaeta explained that her doctor wanted her to request FMLA leave because Theodore had refused to accommodate her previously. Gaeta informed Hicks that she had a scheduled appointment on December 16, 2019 to determine if the surgery would move forward on December 23, 2019.

33. Later that day, after a lengthy phone call in a locked office, Theodore demanded that Gaeta meet with him to complete her annual performance review, which, according to Defendant's policies and procedures, should have been completed months earlier. Theodore reprimanded Gaeta for her absences from work, and Gaeta responded that all of her absences were related to her health issues and felt that she was being subjected to discrimination and harassment. Theodore suggested that she resign. Shortly thereafter, Theodore told Gaeta that Human Resources was upset with Gaeta's absences and felt that he had helped her too much.

34. Theodore retaliated against Gaeta by scheduling her for several midday shifts for the month of December, from 10:00 AM – 8:00 PM, knowing that this change would cause Gaeta significant distress and impose a hardship on her to provide after-school care for her two children, and he scheduled her to work on the days she had requested off for surgery.

35. On or about November 30, 2019, an employee of Defendant and subordinate of Gaeta began cursing and berating Gaeta about a food order. Gaeta responded, "don't be a dick." He became further enraged and continued ranting and raving and cursing at Gaeta. Gaeta then told the employee to clock out and go home. The employee then threw his apron, went into the office, and called Theodore. Theodore told the employee he did not need to leave work. Gaeta attempted to contact Theodore to discuss the matter, but he refused to speak to her.

36. On or about December 2, 2019, Gaeta received FMLA Certification documents from Defendant, which were dated November 22, 2019 but were not postmarked until November 25, 2019, dictating that the forms be completed and returned on or before December 7, 2019. Defendant violated the FMLA by failing to provide Gaeta with the documents within five business days, failing to provide her with fifteen days to respond, and failing to take into account her need to return any completed documents after her doctor appointment scheduled for December 16, 2019.

37. On December 13, 2019, Respondent terminated Gaeta, allegedly for using a single curse word in the above-referenced exchange with the employee.

38. Defendant subjected Gaeta to disparate treatment compared to similarly-situated employees not in her protected class(es). Defendant's employees, including management, regularly use obscene or vulgar language in the workplace and/or engage in offensive and crass behavior without being disciplined, let alone terminated.

Moreover, Defendant has provided preferential treatment to similarly-situated employees by utilizing progressive discipline, which was not afforded to Gaeta.

39. In or about late December 2019, Theodore admitted to another employee of Defendant that Gaeta had not actually been fired for using vulgar language, but rather because she had been missing too much work in the months leading up to her termination.

40. Gaeta has suffered, and continues to suffer, harm as a result of Defendant's unlawful actions.

## V.  Causes of Action

### COUNT I

### VIOLATIONS OF THE FMLA

41. Gaeta hereby incorporates paragraphs 1 – 40 of her Complaint.

42. The acts alleged above constitute unlawful employment practices in violation of the FMLA.

43. Defendant's actions, as alleged above, constitute interference with Gaeta's FMLA rights and/or constitute retaliation for requesting and/or taking FMLA-qualifying leave, including when it terminated her employment.

44. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including lost wages.

45. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of Gaeta' rights as protected by the FMLA.

## COUNT II

## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE – ADA

46. Gaeta hereby incorporates paragraphs 1 - 45 of her Complaint.

47. The acts alleged above constitute unlawful employment practices in violation of the ADA.

48. Defendant has failed and refused to apply the same standard to Gaeta as it has applied to similarly situated employees who are not disabled, do not have a record of disability, and/or who it does not regard as disabled.

49. Defendant took unlawful, adverse employment actions against Gaeta based on her disability, her record of disability, and/or because it regarded her as disabled, including when it failed to engage in the interactive process or provide Gaeta with a reasonable accommodation, when it shared her private health information, and when it terminated her employment.

50. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

51. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including lost wages, mental anguish, and emotional distress.

52. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of Gaeta's rights as protected by the ADA.

## COUNT III

## RETALIATION – ADA

53. Gaeta hereby incorporates paragraphs 1 – 52 of her Complaint.

54. The acts alleged above constitute unlawful employment practices in violation of the ADA.

55. Gaeta engaged in protected activity under the ADA.

56. Defendant took unlawful adverse employment actions against Gaeta in retaliation for her engagement in protected activity, including when it terminated her employment.

57. Defendant has failed and refused to apply the same standard to Gaeta as it has applied to similarly situated employees who have not engaged in protected activity.

58. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

59. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including lost wages, mental anguish, and emotional distress.

60. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of Gaeta's rights as protected by the ADA.

## COUNT IV

## HARASSMENT/HOSTILE WORK ENVIRONMENT - ADA

61. Gaeta hereby incorporates paragraphs 1 - 60 of her Complaint.

62. The acts alleged above constitute unlawful employment practices in violation of the ADA.

63. Defendant subjected Gaeta to severe and/or pervasive harassment and a hostile working environment based on her disability.

64. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

65. Defendant failed and refused to apply the same standards to Gaeta as were applied to similarly situated employees.

66. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including mental anguish and emotional distress.

67. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of McCormick's rights as protected by the ADA.

## COUNT V

## SEX DISCRIMINATION – TITLE VII

68. Plaintiff hereby incorporates paragraphs 1 – 67 of her Complaint.

69. The acts alleged above constitute unlawful employment practices in violation of Title VII.

70. Defendant has failed and refused to apply the same standard to Gaeta as it has applied to similarly situated employees who are male.

71. Defendant took unlawful, adverse employment actions against Gaeta based on her sex, including when it terminated her employment.

72. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

73. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including lost wages, mental anguish, and emotional distress.

74. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of Gaeta's rights as protected by Title VII.

## COUNT VI

## PREGNANCY DISCRIMINATION – TITLE VII

75. Plaintiff hereby incorporates paragraphs 1 – 74 of her Complaint.

76. The acts alleged above constitute unlawful employment practices in violation of Title VII.

77. Defendant has failed and refused to apply the same standard to Gaeta as it has applied to similarly situated employees who are not pregnant.

78. Defendant took unlawful, adverse employment actions against Gaeta based on her pregnancy and/or a medical condition related to pregnancy, including when it terminated her employment.

79. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

80. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including lost wages, mental anguish, and emotional distress.

81. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of Gaeta's rights as protected by Title VII.

## COUNT VII

## HARASSMENT/HOSTILE WORK ENVIRONMENT –TITLE VII AND PDA

82. Gaeta hereby incorporates paragraphs 1 - 81 of her Complaint.

83. The acts alleged above constitute unlawful employment practices in violation of Title VII and the PDA.

84. Defendant subjected Gaeta to severe and/or pervasive harassment and a hostile working environment based on her sex, her pregnancy, and/or a medical condition related to her pregnancy.

85. Defendant's actions, as alleged above, deprived Gaeta of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment.

86. Defendant failed and refused to apply the same standards to Gaeta as were applied to similarly situated employees.

87. Gaeta has suffered damages as a result of Defendant's unlawful conduct, including mental anguish and emotional distress.

88. Defendant's unlawful actions against Gaeta were intentional, willful, and done in reckless disregard of her rights as protected by Title VII and the PDA.

## COUNT XIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89. Gaeta hereby incorporates paragraphs 1 – 88 of her Complaint.

90. Defendant's conduct intentionally or recklessly caused Gaeta to suffer emotional distress.

91. Defendant's conduct was extreme and outrageous.

92. Defendant's actions caused Gaeta to suffer severe mental distress.

## VI.  Relief Requested

WHEREFORE, Plaintiff, Celeste Gaeta, by counsel, respectfully requests that this Court enter judgment in her favor as follows:

1. Find and hold that Gaeta has suffered from Defendant's unlawful acts and issue a judgment holding that Defendant's acts violate the ADA, the FMLA, Title VII, the PDA, and Indiana law;

2. Order Defendant to reinstate Gaeta with similar, salary, and seniority, or pay front pay and benefits to Gaeta in lieu of reinstatement;

3. Order Defendant to pay lost wages, benefits, and other monetary losses to Gaeta;

4. Order Defendant to pay liquidated damages to Gaeta;

5. Order Defendant pay compensatory and punitive damages to Gaeta;

6. Order Defendant to pay pre- and post-judgment interest to Gaeta;

7. Order Defendant to pay Gaeta's attorneys' fees and costs incurred in litigating this action;

8. Order Defendant to pay Gaeta any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,

Jason P. Cleveland (24126-53)
CLEVELAND LEHNER CASSIDY
6214 Carrollton Ave., Ste. 200
Indianapolis, IN 46240
Tel: 317-388-5424
Fax: 317-947-1863
Email: jason@clcattorneys.com

Counsel for Plaintiff, Celeste Gaeta

## DEMAND FOR JURY TRIAL

The Plaintiff, Celeste Gaeta, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

Jason P. Cleveland (24126-53)
CLEVELAND LEHNER CASSIDY
6214 Carrollton Ave., Ste. 200
Indianapolis, IN 46220
Tel: 317-388-5424
Fax: 317-947-1863
Email: jason@clcattorneys.com

17